SHELTON v. LEWIS et al.

GUARDIANS—*Right of wards to lands purchased with their money.*—Where a guardian uses the money of his ward in the purchase of lands, the ward is entitled to the results of the purchase, whether the guardian purchased for himself or his ward, and whether he use the money merely as agent, and not as guardian.

SAME—*What proof necessary, etc.*—The proof must be full, clear and conclusive, and, in such case, the person entitled to the money, may, at his election, charge the trustee, guardian or agent personally, or follow the money into the land and claim the purchase as made in trust for him, and such trust may be established by parol evidence.

RIGHT OF WARDS—*As against subsequent bona fide debtors.*—The right of wards, to property purchased with their money, may be sustained against a conveyance in trust to secure *bona fide* debtors, notwithstanding such trustee and *cestui que trust* were ignorant of their existing equity at the time of the conveyance.

APPEAL FROM CRITTENDEN CIRCUIT COURT.

*O. P. Lyles,* for Appellant.

The *question* in this *case* is, as to the rights of *prior* and *subsequent* incumbrancers to have satisfaction out of the land, according to their priorities.

The rule of law which governs this question is laid down in the following authorities: 2 *Story's Eq. Juris.* Sec. 837; *Berry vs. Mut. Ins. Co.,* 2 *John. C. R.,* 607, 611; *Haines vs. Beach,* 3 *John. Ch. R.,* 461-467; *Dews vs. Cornish,* 20 *Ark.,* 332; *Biscoe vs. Tucker,* 14 *Ark.,* 515; *Hannah vs. Carrington,* 18 *Ark.,* 86; *Clark vs. Carroll,* 18 *Ark.,* 209.

However numerous the encumbrances created on the land, in the nature of mortgages, they leave still in the mortgagor the *ultimate equity of redemption,* by which he may disencumber the mortgaged premises, and re-vest himself with the legal estate. See *Brown vs. Morrison,* 5 *Ark.,* 223; *Biscoe vs. Tucker,* 14 *Ark.,* 521.

In the eye of a court of equity the mortgagor, until a decree of foreclosure, continues the real owner of the estate. The equity of redemption is considered to be the real and *benefi-*

*cial* estate, tantamount to the fee at law.  4 *Kent*, 159, 160.

The mortgagor, so long as he has an equity of redemption, has an estate which he may convey in mortgage by successive deeds, which will take precedence, according to their order in time, provided the subsequent mortgagee had notice of the prior ones.  1 *Washburne on Real P.*, page 546, sec. 6; *Coote on Mortgages*, 34.

The Lewis heirs being then the mortgagees in place of Hopkins, and holding, as such, the legal title as security for the purchase money they have paid, and Asa Shelton occupying the shoes of Duncan holding the equitable interest in the land, it must be sold to pay the Lewis heirs their debt, and Mr. Shelton takes the residue of the proceeds as the second encumbrancer, by virtue of his deed of trust.

The Lewis heirs having been in possession of the premises, at an agreed amount of rent, must account for the rents as mortgagees, because they cannot make a profit to themselves. 2 *Story's Eq. Juris.*, Secs. 1016 *and* 1016 *a*; 4 *Kent*, 166, 168; 2 *John. Ch. R.* 30.

*Watkins & Rose and B. C. Brown*, for Appellees.

It is only because a mortgagee is considered as a purchaser, *sub modo*, that he ever receives protection.  *Frisbee vs. Thayer*, 25 *Wend.*, 399; *Jones vs. Powles*, 3 *My. & K.*, 581; *Joyce vs. De Moleyns*, 2 *J. & L.*, 374; *Siter, Price & Co., vs. McClanahan*, 2 *Grattan*, 280, 301.  *Willoghby vs. Willoghby*, 1 *Tenn. R.*, 763, 767.

That his trust being taken as a mere security for a pre-existing debt—he is not entitled to protection against the equities of complainants is definitely settled.  *Notes to Barret vs. Norsworthy*, 2 *Eq. Lead. Cases*, 104, 105, 106; *Griffin vs. Marquardt*, 17 *N. Y.*, 28; *Van Hewsen vs. Radcliff, Ib.*, 580; *Cook vs. Cook*, 3 *Head.*, 719; *Brown vs. Vanlier*, 7 *Humph*, 239; *Pettigrew vs. Turner*, 6 *Humph.*, 440.  To the last case, on account of its close analogy to this, we ask special attention.

But Shelton was not a purchaser.  He was a mere volun-

teer, taking a mortgage for a pre-existing debt.  As such he stood in the same position as Duncan, the mortgagor; he only had a lien on such interest as he had, and no more.  All the authorities show this.  *Dickerson v. Tillinghast*, 4. *Paige,* 215; *Donaldson v. Bank*, 1. *Du. Chg.*, 103; *Bowen v. Adams,* 1. *S. and Mar.*, 45; *Powell v. Jeffries*, 4. *Scam.*, 387; *Willis v. Henderson, Ib.*, 13; *Metropolitan Bank v. Godfrey*, 23. *Ill.*, 579; *Glineki v. Zawadski*, 8. *Flor.*, 405; *Baze v. Arper*, 6. *Min.*, 220. The doctrine of purchaser for a valuable consideration without notice does not apply between equities.  *Pinson v. Ivey*, 1. *Yerg.*, 296; *Pillow v. Shannon*, 3. *Ib.*, 508; *Craig v. Leiper, Ib.*, 193.

W. I. WARWICK, *Special J.*—In this case there appears to have been a multitude of original and cross bills, answers, exceptions, etc., and much testimony, and inasmuch as we concur in the findings of the court below, we give them here as statements of this case, viz:

"Complainants, Edward B. Lewis, Phœbe and Eliza F. Lewis are, and were at the commencement of this suit, the sole remaining heirs at law of Jacob A. Lewis, deceased; that as such they and their late brother, Pearce A. Lewis, and their late sister, inherited a considerable estate, in money and slaves, from their said father and their grandfather Lewis; that the said Jacob A. Lewis, at the time of his death, left also surviving him, his widow, Mary B. Lewis, who afterwards intermarried with one Bryant Duncan, and soon after died, leaving all of the said children of the said Jacob A. infants, under the age of twenty-one years; that Bryant Duncan became and was by the proper court of Probate of Russell county, Alabama, where they then resided, appointed guardian of and for all of said children of said Jacob A., and continued so to be and to account as such with said court up to, and in the month of March, when he made a final settlement with said court, having in his hands as such guardian of said heirs of the said Jacob A. Lewis, near twenty-five thousand

dollars and a number of slaves; that in the early part of the year 1859, the said heirs being yet infants, the said Bryant Duncan removed with them and their property to Crittenden county, Arkansas, and there continued to reside with them until the time of his death; that prior to the commencement of this suit, the said Pearce A. and Mary L. Lewis departed this life, being then infants, not having been married or leaving any issue, and subsequent to the death of their said mother, Mary B.; that on the 27th day of November, A. D. 1858, the said Bryant Duncan purchased from John W. Hopkins the following described lands, lying and being situate in the county of Crittenden, to-wit: etc., etc.  *  *  *  *  * for the sum and price of twelve thousand dollars, payable, one third on the first day of January, 1859, and one third in twelve months, and one third in twenty-four months from the day of said sale; that the purchase of said lands was made by said Duncan for the said heirs of the said Jacob A. Lewis; that said Duncan took the bond for title to said lands, to be made by said Hopkins, upon payment of the purchase money, to himself; that said Duncan paid to said Hopkins the first payment for said lands, of four thousand dollars; that afterwards, Coleman Boyd, and Tandy H. Trice became, by assignment, the owners of the two notes of said Duncan, given for the other payments of the purchase money of said lands, to whom the said Duncan also paid, as part of the purchase money, the further sum of $3,326 60; that said sum, so paid by said Duncan, of the purchase money for said lands, amounting together to the sum of $7,376 44, was with and out of the moneys of the said heirs of the said Jacob A. Lewis; that said Bryant Duncan, after the notes so given by said Duncan to said Hopkins, for so much of the purchase money of said lands, had come, by assignment, to said Boyd and Trice, and further to secure the payment thereof, to-wit: on the 7th day of March, 1860, the said Duncan, by his deed of that date, duly acknowledged, purported to convey to William C. Trice, all of said lands, in trust for the said pur-

13

pose; that the said Coleman Boyd & Co., on the first day of September, 1865, and to the November term of this court, 1865, filed their bill of complaint against Edward B. Lewis, as the administrator of the estate of Bryant Duncan, deceased, and the unknown heirs of the said Duncan, to enforce a vendor's lien upon said lands, accruing to them as the assignees of said two notes; that said Duncan, on or about the 4th day of February, 1864, departed this life intestate, and the said Edward B. Lewis became his administrator by appointment; that in said suit, so instituted by said Boyd & Co., said Edward B., Phœbe L. and Eliza F. Lewis, were admitted as parties, defendants, and therein filed their cross bill against said Boyd & Co., John W. Hopkins, and the heirs at law of said Duncan, setting up their claim to said lands, upon the ground that so far as paid for, had been paid for, by said Duncan, with their means and money and, in fact, been purchased for them, and praying that they be permitted to pay the residue of said purchase money and interest, actually due upon said lands, and the said John W. Hopkins required to make deed to them for the same, and that all claims of the heirs of said Duncan be divested out of them and vested in said complainants in said cross bill; that James Tappan was appointed administrator of the estate of said Duncan, in and for the purposes of said principal and cross suits; that in said suit, upon the original bill, it was by this court decreed that the said complainants in said cross bill, should pay to said Boyd & Co. the residue of said purchase money, and interest thereon, amounting to the sum of eight thousand five hundred and forty dollars; that upon the payment of the same, they should be and were subrogated to all their rights and benefit of lien for said purchase money, of and upon said lands, then held by said Boyd & Co.; that said complainants in said cross bill, did actually pay to said Boyd & Co., the said sum of $8,540 00; that upon said cross bill, it was decreed, by the court, that all or any right, title or claim of the heirs at law of the said Bryant Duncan, in and to said lands, be and the same were there-

by divested out of them and vested in complainants, Edward B., Phœbe L. and Eliza F. Lewis; and it was further thereby, by the court, decreed that the said John W. Hopkins should make conveyance of said lands to complainants; that afterwards, on the 8th day of December, 1866, the said John W. Hopkins, and his wife Elizabeth Hopkins, by their deed of that date, duly executed and afterwards recorded, did convey the said lands, by proper and appropriate description, to the said Edward B., Phœbe L. and Eliza F. Lewis. And the court doth further find that the said Bryant Duncan, being then and theretofore indebted to the said defendant, Asa Shelton, by promissory note, of date April the 7th, 1861, in the sum of eight thousand seven hundred and twenty-six dollars, and sixty-four cents, on the 10th day of April, 1861, by his deed of that date, commonly called a deed of trust, and afterwards duly acknowledged and recorded, purported to convey a part of the same lands to the defendant Paul Jones, in trust, to secure the payment of the said sum so due to the said Shelton, was contracted and due by the said Duncan prior to the execution of said trust deed to said Jones, and the said deed was executed to secure the payment of the same, and that said debt has not been paid in whole or in part."

The foregoing are the conclusions of fact, which the court below found, and which, on review, we find to be substantially correct.

Thereupon the court below rendered the following decree, viz: "It is therefore ordered, adjudged and decreed, by the court, that the said deed of trust, of date the 10th day of April, 1861, executed by the said Bryant Duncan, to the defendant, Paul Jones, to secure the said debt due to Asa Shelton, by said Duncan, purporting to convey the said lands hereinbefore recited, be and the same is hereby cancelled and annulled, and shall be forever held for naught, and the said Paul Jones and Asa Shelton, and all and every their heirs, assigns, agents or attorneys are, and every of them perpetually restrained, enjoined, and inhibited from, in any way,

executing, or attempting to execute the provisions of said deed against said complainants, their heirs or assigns." From this decree Asa Shelton appealed.

If the facts are correctly found, by the court below, the principles of law, applicable to them, are too well settled to require any discussion. It is objected by the appellant, that the certificate or authentication to the transcript of the proceedings had, in the Probate Court of Russell county, Alabama, is not in due form, in that it does not conform to the act of Congress of 29th May, 1790. The certificate is signed by "T. L. Appleby, Judge of Probate," and authenticated by the seal of his office, and after reciting that the transcript is a true, correct and perfect transcript of all the records, recites that he is the "Judge of said Probate Court, duly commissioned and qualified; that I am *ex-officio* clerk of said court, and the keeper of the records and seal thereof; that said court is a court of record, and this attestation is in due form." According to the rule laid down in *Catlin vs. Underhill*, 4 *McLean*, 199, we deem it sufficiently authenticated. This transcript shows that Duncan had been appointed guardian of the appellees, and that on his last settlement with that court, a large amount of money was in his hands, as such guardian. It is established by other testimony that, at the time of the marriage between Duncan and the mother of the appellees, and when appointed their guardian, he (Duncan) was a man of no property whatever, and insolvent. It is equally well settled by testimony that, when Duncan removed to Arkansas, he had no property or money, save such as remained of the estate of his said wards, and that he brought to Arkansas the identical negroes that belonged to the estate of Jacob A. Lewis. From the record, there can be no doubt that whatever of money was paid by Duncan on the lands, was paid out of money belonging to his wards. There is much proof of statements made by Duncan, in his lifetime, that he bought the lands for his wards, but, in our view, if he used the money, they are

·equally entitled to the results of the purchase, whether he purchased for himself or them, and this would be true, if he had their money merely as agent, and not guardian. The rule is, that where one holds money of another, in any fidu-·ciary character, and invests it in the purchase of land, taking the conveyance to himself, the person entitled to the money, may, at his election, charge the trustee personally, or follow the money into the land and claim the purchase as made in trust for him, and he may establish such trust by parol evidence. *Dyer vs. Dyer,* 1 *Eq. Lead. Cases,* 277. The proof, in such case, must be full, clear and conclusive, and such we deem it to be in this case. Duncan, when he purchased, obtained only an equitable title, viz: bond for title; and this, together with the possession of the premises, he held in trust for his wards, the·appellees, and the purchase money not all being paid, they had an absolute right, on establishing their equity, to pay the residue and procure the legal title; for payment of part of the purchase money will create a trust to the extent of that payment. *Bottsford vs. Burr,* 2 *Johnson's Ch.* 405, 400; *Bank vs. Sweazey,* 35 *Maine,* 81; *Pierce vs. Pierce,* 7 *B. Monroe,* 433; 1 *Eq. Lead. Cases,* 276.

It is insisted, in behalf of appellants, that the deed of trust by Duncan to Jones, to secure the indebtedness due Shelton, was made without notice to either Jones or Shelton, of the equities of the appellees, and hence, they are entitled to relief. It must be borne in mind that Duncan himself had only an equitable title, and of this Jones and Shelton were bound to take notice, and hence, he could only convey an equity to Jones and Shelton, which equity was subsequent to that of the appellees. There is no principle better settled, in courts of equity, than, that where both parties claim by an equitable title, the one who is prior in time, is deemed the better in right. *Byers vs. McDonald,* 12 *Ark.,* 285; 7 *Cr.,* 18; 18 *T. R.,* 532; 7 *Wh.,* 46. The purchaser of an equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. 12 *Ark.,* 285; 7

*Cr.,* 48; 7 *Peters,* 271; *Sugden,* 722; 10 *Pet.,* 212; 10 *How.,* 185; 2 *Eq. Lead. Cases,* 72, 73.

In the case of *Petigrew vs. Turner,* 6 *Humph., R.* 440, and re-affirmed in *Brown vs. Vanlier,* 7 *Humph.,* 239, the court held, "that the right of wards to property purchased with their money, might be sustained against a conveyance in trust, to secure *bona fide* debtors, notwithstanding such trus- tee and *cestui que trust* were ignorant of their existing equity, at the time of the conveyance." It is conceded, by appellants, that "this is not a case in which the *question* of *bona fide* pur- chaser, for a valuable consideration without notice *arises* on this record," and insists that it is solely a question as to the rights of *prior* and *subsequent* incumbrancres to have satisfac- tion, out of the land, according to their privities.

In this connection, appellants insist that, at the time appel- lees procured the deed and legal title from Hopkins, they had notice of the equities of appellant, and that they cannot now avail themselves of the legal title against Shelton, and that Shelton stands before the court as *second incumbrancer;* that they hold the legal title in trust for Shelton, and that they have only a first lien for the residue of the purchase money paid out by them.

We do not so understand the law. It is true, that by de- cree of the court below, the Lewis heirs were directed to pay the residue of the purchase money to Boyd & Co., and were subrogated to the lien of Boyd & Co., and in this, we do not concede the decree correct, for the Lewis heirs, having the prior equity, and the result of the purchase from Hopkins by Duncan, being for their benefit, when they paid the residue of the purchase money, they could not be subrogated to any lien, because they, by that judgment, *extinguished* the lien for the purchase money of the land, on *their own property.* Sup- pose Duncan had, in his lifetime, paid the entire purchase money of the lands, out of the means of his wards, it could not be contended that when they obtained the legal title, in support of their prior equity, they or the land were bound to

discharge subsequent equities. To hold that because they themselves paid the residue of the purchase money, they hold the legal title, in favor of subsequent equities, would place them in a worse condition than if they had paid nothing. We understand the rule to be, that as between prior and subsequent equities to land, where either obtain the *legal title*, if the legal title be good, equity, which follows the law will not interpose to take it away from him, unless there is something unjust or unconscientious in his mode of obtaining it.

In 2d *Equity Leading Cases*, 73, it is said to be "plain that the favor shown by equity to purchasers for value, only extends to those who acquire a legal title to the thing purchased, or who buy under the belief that they are acquiring the legal title, and that the purchaser of an equity, who knows or has the means of knowing the nature of his purchase, must submit to the general rule under which the title of a vendee is measured, and limited to that of the vendor." *Roane vs. Chiles*, 10 *Peters*, 177; *Wailes vs. Cooper*, 24 *Miss.*, 208; *Kramer vs. Arthurs*, 7 *Barr.*, 165.

So, in this case, Shelton and Jones had ample means of ascertaining the title of Duncan, for an examination of the records of Crittenden county, at the time of the execution of the deed of trust, from Duncan to Jones, for Shelton's benefit, would have disclosed the character of Duncan's title, and that, at best, he could convey only the equity of an equity. That it was inconvenient for appellant to make such examination is no sufficient excuse, and he must suffer the penalty for his want of diligence.

Quoting again from 2d *Equity, Leading Cases*, 72, "the purchaser of an equitable estate or interest must stand or fall, in equity, by the estate of the seller, and can not rely upon *bona fides*, and the expenditure of money as a ground for protection against a prior or better right or equity. His conscience may be clear, but he is presumed to have bought with full knowledge of the rule, which throws the risk of a purchase on the purchaser, and must submit to the conse-

quences of his ill fortune, or want of due care and diligence."
16 *Georgia*, 196; *Richardson's Equity*, 155; 7 *Cranch*, 48; 14
*Illinois*, 15.

Finding no substantial error in the record of the court
below, the decree, of that court, is in all things affirmed.